WATER AND WATER RIGHTS If it is factually determined as necessary to effectuate statutory duties, the State Department of Health has the authority to conduct ambient water monitoring for general water quality objectives. The Oklahoma Water Resources Board, if it is factually determined as necessary to effectuate statutory duties, has the authority to conduct ambient water monitoring for general water quality objectives. The Pollution Control Coordinating Board may only conduct ambient monitoring for general water quality objectives under the circumstances delineated in 82 O.S. 934 [82-934](c) (1977). The State Department of Health and the Oklahoma Water Resources Board may not directly receive federal funds pursuant to applications under the Federal Water Pollution Control Act and Federal Environmental Act, other than funds to administer the Construction Grants Program for municipal treatment works which may be received by the Oklahoma State Department of Health. Such funds, (other than for said Construction Grants Programs), by statute, can only be disbursed by the Pollution Control Coordinating Board. Furthermore, it is within the purview of the Pollution Control Coordinating Board to disburse those funds in any manner which it determines will insure the most coordinated use of those funds with the least amount of duplication of effort by various State agencies for purposes of ambient water quality monitoring. The Attorney General has considered your request for an opinion wherein you ask the following questions: "1. Does the State Health Department have the authority to conduct ambient monitoring for general water quality objectives and accept federal monies for such purpose? "2. Does the Oklahoma Water Resources Board have authority to conduct ambient monitoring for general water quality objectives and accept federal monies for such purpose?" "3. Does the Department of Pollution Control have authority to conduct ambient monitoring for general water quality objectives and accept federal monies for such purpose?" In your letter you indicate that it is your understanding that the Pollution Control Coordinating Board did not properly allocate funds pursuant to the FY 1978-106 Water Pollution Control Program Plan of the State of Oklahoma. In order to ascertain the manner in which grant money may permissibly be allocated by the Pollution Control Coordinating Board, the following analysis is made. With regard to the State Department of Health 63 O.S. 1-906 [63-1-906] (1971) provides in pertinent part as follows: "(A) No person shall supply water, or let a contract for any construction work or do any construction work of any nature for supplying water for domestic purposes to the public from or by means of any water works without a written permit from the State Commissioner of Health . . ." (Emphasis added) Title 63 O.S. 1-909 [63-1-909] (1971) provides: "The State Commissioner of Health may, upon application therefor by any person, issue a permit for the discharge of sewage from a sewer system into any waters of the State, and may stipulate in the permit the conditions on which such discharge will be permitted, if he determines that the public health and beneficial uses of such waters will not be adversely affected thereby. If at any time the Commission determines that the discharge of such sewage may become injurious to the public health, or may adversely affect the beneficial uses of water, he may order the discharge of such sewage to be changed or discontinued, after reasonable notice to the permittee." It is evident from reading the above-quoted statute that the Commissioner of Health may issue permits for the discharge of sewage from a sewer system into any water of the State under certain conditions. One such condition is if she determines that the beneficial uses of such waters would not be adversely affected by such a discharge. The issue of whether or not it is necessary to conduct ambient monitoring for general water quality objectives in order to rationally determine if the beneficial uses of the waters would not be adversely affected by a sewage discharge into said stream is a question of fact and not within the purview of an Attorney General's opinion. Title 63 O.S. 1-905 [63-1-905] (1971) provides: "(a) The State Commissioner of Health shall have authority to acquire, operate and maintain water and sewage laboratories for the following purposes: " (1) to make stream pollution studies and other investigations to obtain factual data deemed necessary to support any order or permit of the Commissioner for the construction or improvement of sewage or waste treatment plants; " (2) to provide accurate information on sewage flows and the chemical and/or bacterial characteristics of sewage, which can be used in the design of sewage treatment plants; "(3) to permit the Commissioner to check the operations of both water and sewage treatment plants to determine whether they meet the requirements for which the plants and specifications for the plants were approved by the Commissioner; "(4) to provide laboratory service for cities, towns, counties, state institutions and other state agencies, affecting the health and welfare of the general public; "(5) to make studies and investigations of any waste entering sewer systems or streams, or affecting water supplies, to determine proper treatment; "(6) to make investigations of operating problems in water and sewage plants, in order to improve the quality of plant effluents; "(7) to instruct plant operators in the proper operation of water and sewage treatment plants; and "(8) to expedite the program for the conservation and reclamation of the waters of the State so that they may be used for the industrial, domestic, municipal and recreational purposes." It is apparent that the Legislature has expressly provided the State Health Department with specific authority and facilities to conduct water pollution studies for certain purposes, to wit: to provide accurate information regarding sewage flows and certain characteristics of sewage, to make studies and investigations of any wastes entering sewer systems or streams or affecting public water supplies, and to expedite the program for the conservation and reclamation of the waters of the State so that those waters may be utilized for the designated beneficial uses. It is evident when the above-quoted statutes are read together that the Oklahoma State Health Department has extensive powers with regard to water as it relates to municipal water supplies, water treatment plants, and sewage plants. Therefore, the first part of your first question is answered as follows: The State Health Department has the authority to issue permits for the construction of water supply systems to the public for domestic use and permits for the discharge of sewage from a sewer system into waters of the State. The issue of whether or not the State Department of Health must conduct ambient monitoring for general water quality objectives in order to determine if these permits should issue is a question of fact to be determined by the Health Department. However, should this factual determination be made in the affirmative, the above-quoted statutes can be construed as granting that authority, particularly if absence of such authority would render the statute ineffectual and unenforceable. A statutory grant of an express power carries with it by necessary implication every other power necessary and proper to the execution of the power expressly granted. Missouri, O. and G. Railroad Company v. State, 119 P. 117 (1911). Statutes must be reasonably and sensibly construed in preference to construction which renders all or part of the statutes useless. Tannehill v. Special Indemnity Fund, 538 P.2d 590
(1975). The second part of your first question regarding whether or not the Health Department can accept monies for ambient water monitoring shall be discussed below. Your second question with regard to the authority of the Oklahoma Water Resources Board in these areas will be considered now. Title 82 O.S. 926.3 [82-926.3] (1977) provides in pertinent part as follows: "The Oklahoma Water Resources Board shall have and is hereby authorized to exercise the following powers and duties: 1. To develop comprehensive programs for the prevention, control, and abatement of new or existing pollution of the waters of this State; . . . 4. to encourage, participate in, or conduct studies, investigations, research and demonstrations relating to water pollution and causes, prevention, control and abatement thereof as it may deem advisable and necessary in the public interest for the discharge of its duties under this act; 5. to collect and disseminate information relating to water pollution and the prevention, control and abatement thereof; 6. to adopt, modify or repeal and promulgate standards of quality of the waters of the State in classifying such waters according to their best uses in the interest of the public under such conditions as the Board may prescribe for the prevention, control and abatement of pollution; . . ." Title 82 O.S. 926.6 [82-926.6] (1977) provides in pertinent part as follows: "A. In order to effectuate a comprehensive program for the prevention, control and abatement of pollution of the waters of this State, the Board is authorized to group such waters into classes according to their present and future best uses for the purpose of progressively improving the quality of such waters and upgrading them from time to time by reclassifying them . . ." The issue of whether or not the Water Resources Board, being tasked by statute with the responsibility of classifying waters of the State according to their present and future best uses for the purpose of progressively improving the quality of such waters, must conduct ambient water monitoring tests in order to determine how these waters should best be classified is one of fact and not within the purview of an Attorney General's opinion. However, should this factual determination be made in the affirmative, the Board would have the authority to conduct ambient water monitoring for general water quality objectives for the same reasons as discussed above with regard to the exercise of such authority by the State Department of Health. In referring to the powers and duties of the Oklahoma Water Resources Board, 82 O.S. 926.1 [82-926.1](6) (1977) defines waters of the State as follows: " 'Waters of the State' means all streams, lakes, ponds, marshes, watercourses, waterways, wells, springs, irrigation systems, drainage systems and all other bodies or accumulations of water, surface and underground, natural or artificial, public or private, which shall contain within, flow through, or border upon the state or any portion thereof, except privately owned reservoirs used in the process of cooling water for industrial purposes, provided that water released from any such reservoir into a stream system of the State shall be and become waters of the State." It is apparent from reading the above-quoted statutes that the Oklahoma Water Resources Board has pollution control authority over the waters of the State for overall water quality relating to every aspect of water use to wit: human, municipal, industrial, agricultural, and recreational. Therefore, the first part of your second question is answered as follows: If factually determined as necessary to effectuate its statutory responsibilities, the Oklahoma Water Resources Board has the authority to conduct ambient monitoring for general water quality objectives. The second part of your second question relating to the authority of the Oklahoma Water Resources Board to accept federal monies for the purpose of conducting ambient monitoring for general water quality objectives is answered below. In order to avoid any misinterpretation with regard to the respective statutorily authorized roles of the Department of Health and the Water Resources Board to conduct ambient monitoring for general water quality objectives, the following clarification should be noted. The issue of the extent to which either of these agencies is authorized to conduct ambient monitoring for general water quality objectives is one of fact to be determined by the agencies themselves based upon what activities they must conduct in order to fulfill their statutory responsibilities. Your third question asks if the Pollution Control Coordinating Board has the authority to conduct ambient monitoring for general water quality objectives. Title 82 O.S. 932 [82-932] (1977) provides as follows: "There is hereby created the State Department of Pollution Control. It shall be the duty of the department to establish and maintain a coordinated, continuing surveillance of the waters, air and other natural resources of the State hereinafter referred to as the 'environment' of this State for the purposes of controlling the quality of the environment and for preventing and abating any pollution thereof, whether the source of any pollution is within or without the State, through an enforcement of laws relating thereto and a maximum utilization of existing resources and facilities of State agencies having pollution control responsibilities under existing and subsequently enacted laws." (Emphasis added) It is evident that the word "coordinated" in the body of this statutory section is clearly indicative of the role of the Pollution Control Coordinating Board, in that it is the statutory responsibility of this Board to coordinate all of the duties, authorities and powers given by statute to various State agencies for purposes of the abatement of pollution so that the agencies may best utilize their individual statutory powers and duties and work together in order to effectuate the most highly responsive effort possible toward the abatement of pollution in the State. With regard to the authority of the Board to conduct ambient water monitoring on its own without reliance on other State agencies, the following statutes are noted. Title 82 O.S. 932.1 [82-932.1] (1977) defines waters as follows: " 'Waters' shall include but not be limited to rivers, lakes, streams, springs, impoundments and all other waters or bodies of water, including fresh, brackish, saline, surface or underground. Waters owned entirely by one person other than the State are included only in regard to possible discharge on other property or water. Underground waters include but are not limited to all underground waters passing through pores of rocks or soils or flowing through in channels, whether man made or natural." From a reading of the above-quoted definition of waters, it is evident that the word "waters" as used in the Pollution Control Coordinating Act of 1968 is quite extensive. Title 82 O.S. 932.2 [82-932.2] (1977) defines the duties of the Director of the Department of Pollution Control in pertinent part as follows: "(4) Coordinate all pollution control programs of the State carried on by all State agencies." Title 82 O.S. 934 [82-934] (1977) defines the powers and duties of the Board in pertinent part as follows: "(a) To coordinate and eliminate duplication of effort of the State agencies having statutory authority and environmental pollution control in the prevention and abatement of environmental pollution as necessary to carry out the purposes and the intent of this act; "(c) To act on its own initiative, as provided in 82 O.S. 936 [82-936], to prevent or abate any pollution of the environment of the State at any time the Board finds, by a concurring vote of at least five members thereof, that the agency having jurisdiction over such pollution has failed, refused or neglected to take action to abate or prevent such pollution in discharge of the duties and responsibilities imposed upon such agency by the laws of this State; or to take such action when requested in writing to do so by the agency or agencies affected; or when no agency has jurisdiction to abate or prevent such pollution; or when there is overlapping authority or conflicting authority among such agencies; or when a State agency has jurisdiction but no enforcement authority; the Board may then promulgate rules and regulations necessary to prevent or abate such pollution; "(d) To secure necessary scientific, technical, administrative and operational services by interagency agreement, contract or otherwise. All State agencies, upon direction of the Board, shall make these services and facilities available;" . . . "(g) To conduct studies, investigations, research, and demonstrations relating to environmental pollution, prevention, control and abatement thereof, and to collect and disseminate information relative thereto;" It is evident from a reading of the above-quoted statutes that the legislative intent in creating the Pollution Control Coordinating Board was to create an agency which would operate to eliminate any duplication of effort and coordinate efforts of all member agencies to streamline operations by which pollution abatement programs are conducted. With this basic legislative intent and grant of authority in mind, it is apparent that it is the responsibility of the Pollution Control Coordinating Board to be aware of the activities of the various State agencies with regard to their pollution abatement programs. It is also apparent that with the authority vested in said Board by the Legislature, by virtue of 82 O.S. 934 [82-934](c), it is incumbent upon the Board to take action when it discovers that pollution abatement programs are not being conducted. Title 82 O.S. 934 [82-934](1) (1977) delineates the power and authority of the Pollution Control Coordinating Board and is determinative of the answer to the second half of all your questions which inquire which State agency has the authority to accept federal monies to conduct ambient monitoring for general water quality objectives, to wit: "To accept funds and grants from private and governmental sources, subject to provisions of this act, and serve as a recipient for federal funds disbursed pursuant to the Federal Water Pollution Control Act and the Federal Environmental Protection Act. Provided, that the State Department of Health is authorized to continue to be the recipient of federal funds to administer the construction grants programs from municipal treatment works." A plain reading of the above-quoted statute indicates that the Pollution Control Coordinating Board must be the initial recipient of funds disbursed pursuant to the Federal Water Pollution Control Act and used for the purpose of ambient monitoring for water quality objectives, however, the State Department of Health is authorized to continue to be the recipient of federal funds to administer their construction grants program for municipal treatment works. Therefore, the second part of each of your three questions is answered as follows: The Oklahoma Water Resources Board and the State Department of Health may not directly receive federal funds disbursed pursuant to grants under the Federal Water Pollution and Control Act and the Federal Environmental Protection Act. The Pollution Control Coordinating Board may disburse funds to those agencies which have authority to conduct ambient monitoring for general water quality objectives. Moreover, by virtue of the authority expressed in 82 O.S. 934 [82-934](a), it is within the purview of the Pollution Control Coordinating Board to disburse those funds in any manner which it determines will coordinate and eliminate duplication of effort by member agencies. It is, therefore, the opinion of the Attorney General that your questions be answered as follows: If it is factually determined as necessary to effectuate statutory duties, the State Department of Health has the authority to conduct ambient water monitoring for general water quality objectives. The Oklahoma Water Resources Board, if it is factually determined as necessary to effectuate statutory duties, has the authority to conduct ambient water monitoring for general water quality objectives. The Pollution Control Coordinating Board may only conduct ambient monitoring for general water quality objectives under the circumstances delineated in 82 O.S. 934 [82-934](c) (1977). The State Department of Health and the Oklahoma Water Resources Board may not directly receive federal funds pursuant to applications under the Federal Water Pollution Control Act and Federal Environmental Act, other than funds to administer the Construction Grants Program for municipal treatment works which may be received by the Oklahoma State Department of Health. Such funds, (other than for said Construction Grants Programs), by statute, can only be disbursed by the Pollution Control Coordinating Board. Furthermore, it is within the purview of the Pollution Control Coordinating Board to disburse those funds in any manner which it determines will insure the most coordinated use of those funds with the least amount of duplication of effort by various State agencies for purposes of ambient water quality monitoring. (AMALIJA J. HODGINS)